**This order is SIGNED.**


**Dated: September 7, 2022**

*William J. Thurman*



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

*msc*

---

*Order Prepared and Submitted by:*
Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Simeon Brown, USB #17951
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
SBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for SoNev Construction LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re<br><br>SONEV CONSTRUCTION LLC and<br><br>KEITH GILBERT,<br><br><br>Debtors. | Jointly Administered under<br>Case No. 22-bk-21037-WTT<br><br>(Jointly Administered with Case No. 22-bk-21988-WTT)<br><br>Chapter 11<br><br>**THIS DOCUMENT RELATES TO BOTH DEBTORS** |

---

**ORDER AUTHORIZING THE DEBTOR TO (1) OBTAIN POST-PETITION DIP FINANCING ON A SUPERPRIORITY, PRIMING BASIS; (2) EXERCISE OPTION AGREEMENTS TO PURCHASE CERTAIN LEASED EQUIPMENT; AND (3) SELL THE PURCHASED EQUIPMENT VIA RITCHIE BROS. AUCTION AND REPAY DIP FINANCING WITH THE PROCEEDS**

---

Upon the motion (the "**Motion**")[1] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**SoNev**"), and the Court, finding cause therefore to enter this Order authorizing the Debtor (1) to obtain post-petition financing under section 364 of the Bankruptcy Code (the "**Equipment Loan**") from EastWest Bank (the "**DIP Lender**"); (2) to use the proceeds of the Equipment Loan to exercise options to purchase certain equipment currently subject to lease agreements with purchase options; and (3) to sell under section 363 of the Bankruptcy Code the purchased equipment and thereby pay off the Equipment Loans, and the notice of the Motion and the opportunity to object having been good and adequate under all the circumstances, and no party in interest having filed any objection to the relief requested in the Motion, and the default of all non-objecting parties having been taken; and upon the record of the proceedings before this Court; and the legal and evidentiary bases set forth in the Motion establish just cause for the relief granted herein and that such relief is reasonable and necessary and will benefit the Debtor's estate,

**THEREFORE, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:**

**I.     JURISDICTION AND BASES FOR RELIEF**

1.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.     This is a core matter under 28 U.S.C. § 157(b)(2).

3.     Notice of the Motion and the Hearing are sufficient under the circumstances, and no further notice need be given for the relief sought in the Motion and granted herein.  The Motion was noticed and heard on an expedited basis, and the Court finds that this expedited notice procedure was necessary and reasonable to prevent harm to the Debtor's estate, and that no party was prejudiced thereby.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4887-3445-3041

4.     The statutory predicates for the relief granted herein are sections 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Rules**").

**A.     The Debtor Is Authorized to Borrow the Equipment Loan.**

5.     The Debtor is unable to obtain unsecured or secured credit on terms superior to those offered in the proposed Equipment Loan and is unable to obtain secured financing the security interests as required by the Equipment Loan Agreement on a priming basis.  The Court finds that the requested first-priority security interest does not prime any pre-petition creditor as to the following Leased Equipment because the Leased Equipment was not property of the Debtor's estate prior to the Petition Date:

| Unit | Year | Make | Model | Description | Serial/VIN | Lessor |
|------|------|------|-------|-------------|------------|--------|
| HT-22 | 2012 | CAT | 772H | Haul Truck | RLB784 | Bill Miller Equip. |
| HT-20 | 2008 | CAT | 773F | Haul Truck | EED791 | Bill Miller Equip. |
| HT-23 | 2014 | CAT | 772G | Haul Truck | CAT0772GHKEX00131 | Iron Capital |
| HT-25 | 2014 | CAT | 772G | Haul Truck | CAT0772GJKEX00140 | Iron Capital |
| HT-26 | 2014 | CAT | 772G | Haul Truck | CAT0772GVKEX00139 | Iron Capital |
| HT-24 | 2014 | CAT | 772G | Haul Truck | CAT0772GCKEX00138 | Iron Capital |
| HT-21 | 2014 | CAT | 773G | Haul Truck | JWS283 | Bill Miller Equip. |
| 33906 | 1989 | CAT | D9L | Crawler Dozer | S/N 14Y75463 | Owned outright* |

(the "**Leased Equipment**").  Nevertheless, to avoid any doubt, the Court hereby grants and declares that the DIP Lender will have a first-priority security interest in the Leased Equipment.

6.     The Court further finds that it is necessary and reasonable and hereby grants in connection with the Equipment Loan, a first-priority security interest in the Leased Equipment and the following additional Equipment, which is currently unencumbered except for the blanket lien of the United States Small Business Administration (the "**SBA**"):

3

4887-3445-3041

| Description / Product Type | Catagories | Year | Serial Number / VIN |
|---|---|---|---|
| Caterpillar D9L Crawler Tractor | Tractor OROPS | 2005 | 14Y75463 |
| 613 Water pull Water Scrapper | Tractor OROPS | 2006 | CAT0613CV8LJ02343 |
| Komatsu PC750 | Tractor OROPS | 2001 | 10356 |
| Caterpillar 637D | Tractor OROPS | 1979 | 27W1290 |
| Caterpillar 988G Wheel Loader | Loader | 2002 | BNH0457 |
| Mega Mac MPT 12 Mega Water Tower | Articulated Truck | 2021 | 94409 |
| 9x Booster RED Lowboy | Articulated Truck | 1984 | N/A |
| 8x Jeep White Lowboy | Articulated Truck | 1987 | N/A |
| Mechanic Truck T300 | Articulated Truck | 1998 | 3BKMHD7X4WF778869 |

(the "**Additional Equipment**" and, together with the Leased Equipment, the "**Collateral**").

7.      Accordingly, the DIP Lender is hereby granted a first-priority security interest in all of the Collateral in connection with the DIP Loan.  The Court finds that the SBA is adequately protected by other collateral and, therefore, grants the DIP Lender a priming lien on the Collateral.

8.      This Order will constitute both attachment and perfection of the DIP Lender's security interest in the Collateral, and no further action is necessary to accomplish attachment and perfection.  Nevertheless, the DIP Lender is authorized to take any actions it deems necessary in its sole discretion to perfect its security interests including filing a UCC-1 financing statement and/or causing the security interest to be reflected on the Collateral title, if any.  The automatic stay of section 362 is hereby modified to the extent necessary to allow the DIP Lender to take all actions necessary to secure and perfect its Collateral.  Further, upon a default as set forth in the Equipment Loan Agreement, the automatic stay of section 362 is hereby modified to the extent necessary to allow the DIP Lender to exercise its remedies under the Equipment Loan Agreement without further order of this Court, including repossessing its collateral, foreclosing or selling at a sale under Article 9 of the UCC its Collateral, and redirecting the proceeds of any sale of the collateral to the DIP Lender.

4

9.     The Court finds that the Equipment Loan (a) has been proposed and negotiated in good faith and at arm's length; (b) is necessary in order to preserve the assets of the Debtor's bankruptcy estate; and (c) is fair, reasonable, and adequate under all of the circumstances of this Chapter 11 Case; and (d) should therefore be approved on a final basis as set forth herein.

10.     The Debtor is authorized on a final basis to enter into the Equipment Loan Agreement and such other related loan documents as are necessary to obtain the Equipment Loan. The Debtor is further authorized to execute, deliver, and perform under said Equipment Loan Agreement and any related documents.  All actions heretofore taken by the Debtor with respect to the negotiation, documentation, and implementation of the DIP Facility are approved on a final basis.

**B.      The Debtor Is Authorized to Exercise the Purchase Options.**

11.     The Court finds that using the proceeds of the Equipment Loan to exercise the Purchase Options to purchase the Leased Equipment is a reasonable exercise of the Debtor's sound business judgment.  The Debtor is authorized to exercise the Purchase Options and purchase the Leased Equipment in accordance with the payoffs provided by the Lessors.

**C.      The Debtor Is Authorized to Sell the Equipment.**

12.     The Court finds that the proposed sale of the Leased Equipment through Ritchie Bros Auctioneers, including its online auction house subsidiary, IronPlanet, Inc. ("**Ritchie Bros.**") is a reasonable exercise of the Debtor's sound business judgment.

13.     The Debtor no longer needs the Leased Equipment on the Virginia Mine site because the Virginia Mine site is shut down.  Continuing to pay the rental payments under the Leases will drain cash from the Debtor's estate and, without revenue from the Virginia Mine

5

project, the payments will not benefit the Debtor's estate. The cost of transportation of the Leased Equipment to the Intermountain West would be prohibitive. Accordingly, the Debtor's proposal to sell the Leased Equipment is a reasonable exercise of its sound business judgment.

14.     The Debtor is further authorized to enter into Sale Agreement with Ritchie Bros for the sale and payment of commissions on such sale to Ritchie Bros, substantially in the form attached as Exhibit C to the Motion, and the retention and payment of Ritchie Bros. directly from the auction proceeds are approved under sections 327 and 330

15.     The Court finds that the sales of the Leased Equipment are in good faith and for fair market value. The Court further finds that the sales of the Leased Equipment are free and clear of all interests under section 363(f) of the Bankruptcy Code. The Debtor may sell the Leased Equipment free and clear without further order of this Court.

16.     The Debtor and Ritchie Bros are further authorized and ordered to distribute to the DIP Lender directly from the net sale proceeds sufficient to repay in full the then-outstanding balance of the Equipment Loan until paid in full. The remaining balance, after deduction of Ritchie Bros' commission, shall be paid to the Debtor's DIP account and become property of the Debtor's estate.

17.     The Court retains jurisdiction to enforce and interpret the terms of this Order.

\#\#\#

**[END OF DOCUMENT]**

4887-3445-3041

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **ORDER AUTHORIZING THE DEBTOR TO (1) OBTAIN POST-PETITION DIP FINANCING ON A SUPERPRIORITY, PRIMING BASIS; (2) EXERCISE OPTION AGREEMENTS TO PURCHASE CERTAIN LEASED EQUIPMENT; AND (3) SELL THE PURCHASED EQUIPMENT VIA RITCHIE BROS. AUCTION AND REPAY DIP FINANCING WITH THE PROCEEDS** shall be served to the parties in the manner designated below:

By Electronic Service: I certify that the parties of record in this case as identified below, are registered CM/ECF users.

- Jesse A.P. Baker    ecfutb@aldridgepite.com, jbaker@aldridgepite.com
- Megan K Baker    baker.megan@dorsey.com
- Scott S Bridge    sbridge@keslerrust.com
- P. Matthew Cox    mw@scmlaw.com, ec@scmlaw.com
- T. Edward Cundick    tcundick@wnlaw.com, tcundick-secy@wnlaw.com;orders@wnlaw.com
- Bret R Evans    brevans@swlaw.com, jritchie@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com
- George B. Hofmann    ghofmann@ck.law, mparks@ck.law
- Jared Inouye    jinouye@btjd.com, docketing@btjd.com;cmontoya@btjd.com;kdunn@btjd.com;sruiz@btjd.com
- Nickolas Karavolas    nkaravolas@phillipslytle.com
- Peter J. Kuhn    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov
- David H. Leigh    dleigh@rqn.com, ASanchez@rqn.com;docket@rqn.com
- Jason A. McNeill    mcneill@mvmlegal.com, coley@mvmlegal.com
- Darren B. Neilson    dneilson@parsonsbehle.com
- David W. Newman tr    david.w.newman@usdoj.gov, Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov
- Mark C. Rose    mrose@mbt-law.com, markcroselegal@gmail.com
- Paul Norwood Jonas Ross    paul@paulnjrosslaw.com, ross.paulr102673@notify.bestcase.com
- Brian M. Rothschild    brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- D. Ray Strong tr    rstrong@thinkbrg.com, UT30@ecfcbis.com;drstrong@ecf.axosfs.com
- Jeffrey L. Trousdale    jtrousdale@cohnekinghorn.com, mparks@ck.law
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Tyler S. Wirick    ecfutb@aldridgepite.com, TWirick@ecf.courtdrive.com

The following parties in interest are not registered ECF users and must be notified manually:

CFO Solutions, LLC dba Amplēo
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713

Nathaniel H. Wadsworth
Holden, Kidwell, Hahn & Crapo, PLLC
1000 River Walk Drive
Suite 200
Idaho Falls, ID 83405

Ritchie Bros. Auctioneers (America) Inc.
4000 Pine Lake Rd
Lincoln, NE 68516

Dated this 7th day of September, 2022.

PARSONS BEHLE & LATIMER

/s/ Brian M. Rothschild
Brian M. Rothschild

2

# <u>EXHIBIT 1</u>

Equipment Loan Agreement and Note

## PRIMING DEBTOR-IN-POSSESSION
## LOAN AND SECURITY AGREEMENT

**THIS PRIMING DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT** (this "***Agreement***"), dated September __, 2022 (the "***Effective Date***"), is made and executed by and among **East West Bank**, ("***Lender***"), and **SoNev Construction LLC, Debtor-In-Possession** (collectively "***Borrower***").

     A.       On March 25, 2022 (the "***Petition Date***"), Borrower commenced a case, Case No.22-bk-21037 (the "***Chapter 11 Case***") under Title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Utah (the "***Bankruptcy Court***"), and Borrower has retained possession of its assets and continues the operation of its businesses as debtor-in-possession.

     B.       Borrower has requested that Lender provide Borrower with a post-petition loan in the form of a senior secured credit facility in the principal aggregate amount of **ONE MILLION TWO HUNDRED FIVE THOUSAND AND NO/100 DOLLARS ($1,205,000.00)**, as required (such amount, the "***DIP Loan Amount***"), to fund the purchase of certain equipment set forth on <u>**Exhibit 1**</u> hereto (the "***Equipment Collateral***") for a ninety day period to allow the Borrower to market and sell the Equipment Collateral for the benefit of the estate (the "***Loan Period***").

     D.       After entry of the Order of the Bankruptcy Court authorizing the Borrower to enter into the transaction, Lender is willing to make the post-petition credit facility (the "***Loan***") to Borrower in the DIP Loan Amount upon the terms and conditions set forth herein.

     **NOW THEREFORE**, the parties agree as follows:

## SECTION 1.
## LOAN AND TERMS OF PAYMENT

1.1    **Loan.**

     A.    **Loan Advance**.  Subject to the terms and conditions of this Agreement, Lender will make funds under the Loan available to Borrower pursuant to an order approving the borrowing of the DIP Loan Amount, which Order shall be satisfactory in form and substance to Lender and Borrower and which order shall be in full force and effect and shall not have been stayed, reversed, vacated or subject to appeal.   Any Advance made will be subject to all terms and conditions of this Agreement. Notwithstanding the above, no Advance will be made unless Borrower has satisfied all conditions for receipt of the Advance as set forth in this Agreement.

     B.    **Use of Loan Proceeds**.  The proceeds of the Loan shall be used by Borrower solely to purchase the Equipment Collateral.

1.2    **Interest on Loan.**

     **Interest Rate and Accrual on Loan**.  The Loan shall bear interest at the rate of the Wall Street Journal prime rate + 7.5% per annum (the "***Interest Rate***").  In the event that the Lender declares an Event of Default as set forth herein, amounts due and owing hereunder shall accrue at the Default Rate of Wall Street Journal prime rate + 10.5% per annum (the "***Default Rate***").

1.3     **Loan Repayment.**

A.     **Maturity Date.**  The  principal amount of the Loan and all accrued interest thereon shall be paid in full or otherwise satisfied on the earliest of the following (1) ninety (90) days after the Effective Date of this Agreement; (2) twenty one (21) days after the date of the scheduled auction of the Equipment Collateral as set forth in the Listing Agreement between the Borrower and IronPlanet, Inc. (the "***Listing Agreement***"), or (3) the effective date of the Borrower's chapter 11 plan (the "***Maturity Date***"), in cash, without further application to or order of the Bankruptcy Court.

B.     **Prepayment.**  The Loan and all interest accrued thereon  may be prepaid, in whole or in part, from time to time without premium or penalty.

C.     **Application of Loan Payments**.  Each payment received by Lender from Borrower shall be applied (i) first as payment of interest accruing on the Loan, and (ii) second as payment of the outstanding principal of the Loan.

D.     **General Provisions Regarding Payments.**  All payments by Borrower on the Loan and on any interest accrued thereon shall be made in same day funds on the date due, free of any restriction or condition and without setoff or counterclaim, and delivered to the Lender not later than 4:00 p.m. (prevailing Pacific Time) on the date due.  Except if expressly provided otherwise, whenever any payment to be made hereunder shall be stated to be due on a day that is not a business day, such payment shall be made on the next succeeding business day.

# SECTION 2.
## CONDITIONS TO EFFECTIVENESS

2.1     **Conditions Precedents to Advance.**

The obligation of Lender to make any Advance is subject to the following conditions precedent**:**

A.     The Bankruptcy Court shall have entered an order (whether an interim order or a final order), in form and substance satisfactory to the Lender and the Borrower, that shall be in full force and effect and shall not have been reversed, stayed, modified or amended (the "***Order***").

B.     IronPlanet, Inc. shall have confirmed in writing that the Equipment Collateral has been refurbished and is in an acceptable condition to IronPlanet, Inc.

C.     Without limiting any other conditions specified in this Agreement, as of the Effective Date of the Agreement:

(i)     The representations and warranties contained in this Agreement shall be true and correct in all material respects as if made on the Effective Date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects on and as of such earlier date;

(ii)     Borrower shall be in compliance with this Agreement and no event shall have occurred and be continuing that would constitute an Event of Default, as defined below, under this Agreement;

2

4866-8698-8593\2

(iii)    Borrower shall have provided Lender with evidence of insurance covering the Collateral with Lender named as loss-payee;

# SECTION 3.
## SECURITY; ADMINISTRATIVE PRIORITY

**3.1    Collateral; Grant of Lien and Security Interest.**

As security for the full and timely payment of the Loan and the performance hereunder, Borrower grants to Lender a first priority purchase money and, priming lien on all of the Equipment Collateral set forth on Exhibit 1, and a first priority priming lien on the additional equipment set forth on **Exhibit 2** hereto (the "***Additional Collateral***", and together with the Equipment Collateral, the "***Collateral***").

Upon entry of the Order of the Bankruptcy Court authorizing this Agreement, the liens and security interests in favor of Lender shall be valid and perfected liens and security interests in the Collateral, prior to all other liens and security interests in the Collateral.  The security interests and liens herein described shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Chapter 11 Case.

**3.2    Administrative and Other Priority.**

Upon entry of the Order, the Loan and all interest accrued thereon shall at all times be secured by a valid, binding, continuing, enforceable and fully-perfected first priority senior security interest in and lien on all Collateral, senior to and priming all other liens on the Collateral as authorized by the Order (the "***Priming Liens***").

**3.3    No Filings Required.**

The Lender's liens and security interests securing the Loan and all interest accruing thereon shall be deemed valid and perfected upon entry of the Order.  Lender shall not be required to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validate or perfect the lien and security interest granted by or pursuant to this Agreement and the Order, provided that Lender shall be permitted to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action with respect to the lien and security interest granted pursuant to this Agreement and Borrower shall cooperate with Lender in connection therewith.

**3.4    Survival of Claims**

The principal balance of the Loan and all interest accruing thereon shall survive the entry of an order (a) confirming any plan of reorganization in the Chapter 11 Case if any such amounts are due and owing as of confirmation; (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing the Chapter 11 Case.  The liens and security interests granted to the Lender pursuant to the Final Order shall continue in full force and effect and maintain their priority as set forth in the Order until the Loan and interest accruing thereon have been repaid in full.

3

3.5     **No Priming Lien**

Unless otherwise ordered by the Bankruptcy Court, no claim or lien having a priority superior or *pari passu* with those granted to the Lender by this Agreement and the Order shall be granted by the Borrower while the Loan or any accrued interest thereon remains outstanding absent the written consent of the Lender.


# SECTION 4.
## REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into this Agreement and to make the Loan, Borrower represents and warrants to Lender, on the date of this Agreement, that the following statements are true and correct in all material respects.

4.1     **Power and Authority**

Upon the entry by the Bankruptcy Court of any interim order and, when issued, the Order, the execution, delivery and performance by Borrower of this Agreement and the creation of all liens provided for herein: (A) are within Borrower's power; (B) do not conflict with or result in the breach or termination of, constitute a default under or accelerate or permit the acceleration of any performance required by, any indenture, mortgage, deed of trust, material lease, material agreement or other material instrument entered into after the Petition Date to which Borrower is a party or by which Borrower or any of its property is bound, and (C) have been duly authorized by all necessary company action and constitutes a legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms.  This Agreement and all documents reasonably requested by the Lender in connection with the grant of security and Liens in the Collateral have been duly executed and delivered by the Borrower.


# SECTION 5.
## AFFIRMATIVE COVENANTS

In addition to the other covenants and agreements of the Borrower set forth herein, the Borrower covenants and agrees that, until payment in full of the Loan and all interest accruing thereon, the Borrower shall perform all of the following covenants.

5.1     **Compliance with Listing Agreement**

A.      Borrower shall comply with all terms and conditions of the Listing Agreement, including, but not limited to, ensuring the Equipment Collateral is refurbished and in a condition acceptable to IronPlanet, Inc., and that such Equipment Collateral is delivered as required under the Listing Agreement.

B.      Borrower shall maintain adequate insurance on the Collateral with DIP Lender listed as a loss payee.

C.      Borrower shall provide Lender with any documents necessary to evidence DIP Lender's security interest in the Collateral, including, but not limited to, titles to the Collateral.

4866-8698-8593\2

## SECTION 6.
## EVENTS OF DEFAULT; REMEDIES

6.1     **Events of Default**

The occurrence of any one or more of the following events with respect to this Agreement, the Advance or the liens related thereto (regardless of the reason therefore) shall constitute a "***Default***" hereunder:

A.      maturity, termination or expiration or the Loan;

B.      any default, violation, or breach of any of the terms of this Agreement, the Listing Agreement, or the Order;

C.      conversion of the Bankruptcy Case to a bankruptcy case under chapter 7 of the Bankruptcy Code or the dismissal of Borrower's Bankruptcy Case;

D.      the appointment of a trustee, a responsible person, or an examiner with expanded powers relating to the operation of the business of any of the Borrower in any Borrower Bankruptcy Case, with the exception of the Subchapter V Trustee, without the consent of the Lender;

E.      Borrower fails to repay the outstanding obligations of the Loan on or prior to the Maturity Date; or

F.      any representation or warranty made hereunder proves to have been false or misleading in any material respect when made or furnished.

Upon the occurrence of a Default, the issuance of a notice of Default by the Lender and the passing of three (3) business days (such a continuing Default, an "***Event of Default***"), the Lender may, in its discretion, declare an Event of Default.

6.2     **Remedies**

Upon the Lender declaring an Event of Default, the entire unpaid principal balance of the Loan, any accrued interest, and all other amounts due and owing to Lender shall immediately become due and payable.  Lender shall be entitled to immediately take possession of the Collateral, and exercise any and all other rights and remedies available to Lender at law or in equity.

## SECTION 7.
## MISCELLANEOUS

7.1     **Notices**

A.      **Notices Generally**.  Except in the case of notices and other communications expressly permitted to be given by telephone, e-mail or fax, all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail as follows:

4866-8698-8593\2

If to Borrower:

_____

with a copy to:

_____


If to Lender:

East West Bank
Attn: Robert Mostert
135 N. Los Robles Ave, 6th Floor
Pasadena, CA 91101
robert.mostert@eastwestbank.com

with a copy to:

DORSEY & WHITNEY LLP
Attn: Megan K. Baker
111 South Main Street, Suite 2100
Salt Lake City, Utah 84111
baker.megan@dorsey.com

Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received; notices sent by telephone, e-mail or fax shall be deemed to have been given when sent.

B.      **Change of Address, Etc.**  Any party hereto may change its address for notices and other communications hereunder by written notice to the other parties hereto.

7.2      **Survival of Representations, Warranties and Agreements**

All representations, warranties and agreements made herein shall survive the execution and delivery of this Agreement and the making of the Loan hereunder.

7.3      **Failure or Indulgence Not Waiver; Remedies Cumulative**

No failure or delay on the part of Lender in the exercise of any power, right or privilege hereunder shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.  Any and all rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

7.4      **Severability**

In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or

4866-8698-8593\2

obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

7.5    **Headings**

Section and Subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

7.6    **Applicable Law; Successors and Assigns**

THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF UTAH EXCEPT AS GOVERNED BY THE BANKRUPTCY CODE.  This Agreement shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and the successors and assigns of Lender.  No Borrower's rights or obligations hereunder, or any interest therein, may be assigned or delegated by Borrower without the prior written consent of Lender.

7.7    **Consent to Jurisdiction**

A.    EACH PARTY HERETO HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND LENDER PERTAINING TO THIS AGREEMENT; PROVIDED, THAT LENDER AND BORROWER ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A UNITED STATES DISTRICT COURT OTHER THAN THE BANKRUPTCY COURT; PROVIDED FURTHER, THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT TO THE EXTENT PERMITTED UNDER AN ORDER ENTERED ON A STAY RELIEF MOTION TO REALIZE ON THE PRE- OR POSTPETITION COLLATERAL.

EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.8    **Counterparts; Integration; Effectiveness; Miscellaneous**

This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract.   This Agreement supersedes any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Agreement shall become effective when it shall have been executed by Lender and Borrower, and thereafter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  Delivery of an executed counterpart of a signature page of this Agreement or any document or instrument delivered in connection with this Agreement by telecopy or other electronic

4866-8698-8593\2

means shall be effective as delivery of a manually executed counterpart of this Agreement.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time modified (subject to any restrictions set forth herein), (b) all references herein to Sections, Exhibits and Schedules shall be construed to refer to Sections of, and Exhibits and Schedules to, this Agreement.

**[SIGNATURE PAGE FOLLOWS.]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**BORROWER:**

**SONEV CONSTRUCTION, LLC, DEBTOR IN POSSESSION**

**By:** _____
**Name:** _____
**Its:** _____

**LENDER:**

**EAST WEST BANK**

**By:** _____
**Name:** _____
**Its:** _____

9

**EXHIBIT 1**

**EQUIPMENT COLLATERAL**

| Unit | Year | Make | Model | Description | Serial/VIN | Lessor |
|------|------|------|-------|-------------|------------|--------|
| HT-22 | 2012 | CAT | 772H | Haul Truck | RLB784 | Bill Miller Equip. |
| HT-20 | 2008 | CAT | 773F | Haul Truck | EED791 | Bill Miller Equip. |
| HT-23 | 2014 | CAT | 772G | Haul Truck | CAT0772GHKEX00131 | Iron Capital |
| HT-25 | 2014 | CAT | 772G | Haul Truck | CAT0772GJKEX00140 | Iron Capital |
| HT-26 | 2014 | CAT | 772G | Haul Truck | CAT0772GVKEX00139 | Iron Capital |
| HT-24 | 2014 | CAT | 772G | Haul Truck | CAT0772GCKEX00138 | Iron Capital |
| HT-21 | 2014 | CAT | 773G | Haul Truck | JWS283 | Bill Miller Equip. |

**EXHIBIT 2**

**ADDITIONAL COLLATERAL**

| Description / Product Type | Categories | Year | Serial Number / VIN |
|---|---|---|---|
| Caterpillar D9L Crawler Tractor | Tractor OROPS | 2005 | 14Y75463 |
| 613 Water pull Water Scrapper | Tractor OROPS | 2006 | CAT0613CV8LJ02343 |
| Komatsu PC750 | Tractor OROPS | 2001 | 10356 |
| Caterpillar 637D | Tractor OROPS | 1979 | 27W1290 |
| Caterpillar 988G Wheel Loader | Loader | 2002 | BNH0457 |
| Mega Mac MPT 12 Mega Water Tower | Articulated Truck | 2021 | 94409 |
| 9x Booster RED Lowboy | Articulated Truck | 1984 | N/A |
| 8x Jeep White Lowboy | Articulated Truck | 1987 | N/A |
| Mechanic Truck T300 | Articulated Truck | 1998 | 3BKMHD7X4WF778869 |

# PROMISSORY NOTE

US $1,205,000

_____ ___ 2022

This Secured Promissory Note ("***Note***"), dated as of _____, 2022, is made and delivered by SoNev Construction LLC, debtor in possession ("***Borrower***"), in favor of EastWest Bank, a California State Chartered Bank, as lender ("***Lender***").  Capitalized terms not otherwise defined herein shall be given the meaning set forth in the Priming Debtor-In-Possession Loan and Security Agreement (the "***Loan Agreement***").

FOR VALUE RECEIVED, Borrower promises to pay Lender the principal sum of One million two hundred five thousand and 00/100 United States Dollars (US $1,205,000.00).

## <u>RECITALS</u>

A.      On March 25, 2022, Borrower filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "***Bankruptcy Court***") in the case styled as *In re SoNev Construction, LLC*, Case No. 22-bk-21037 (the "***Bankruptcy Case***").

B.      Borrower has requested that Lender provide Borrower with a post-petition loan in the amount of ONE MILLION TWO HUNDRED AND FIVE THOUSAND DOLLARS AND NO/100 ($1,205,000) (the "***DIP Loan***") to fund the purchase of the Equipment Collateral, for the period of ninety (90) days, to permit the Borrower to sell the Collateral for the benefit of Borrower's bankruptcy estate.

C.      Lender has agreed to provide the DIP Loan on the terms and conditions stated herein.

**NOW THEREFORE,** the parties agree as follows:

1.      <u>Interest Rate</u>.  Interest shall accrue at the rate of WSJP + 7.5%, with a floor rate of 3.25%, calculated daily and payable monthly in arrears on the first day of each calendar month.

2.      <u>Payments</u>.  Payments shall be due and payable as set forth in the Loan Agreement.

3.      <u>Maturity Date</u>.  The Maturity Date shall be no later than 90 days after entry of the Order.

4.      <u>Prepayment</u>. Borrower may prepay the DIP Loan, in full or in part, at any time, subject to and in accordance with the terms and provisions specified in the Loan Agreement.

5.      <u>Collateral</u>.  This Note shall be secured by a first priority priming lien in the Collateral.

6.      <u>Defaults; Acceleration</u>.  The occurrence of any Event of Default as defined in the Loan Agreement shall be a default hereunder.  Upon the occurrence of any Event of Default and the expiration of any applicable notice and cure period, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately.  Subject to the applicable provisions of law, upon any such

1

declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note the contrary notwithstanding.

7.      <u>Default Rate.</u>  From and after the Maturity Date, or if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, the amount of the missed payment(s), or, if the Note has been accelerated, all amounts owing under the Note shall bear interest at a default rate as set forth in the Loan Agreement.

8.      <u>Waivers.</u>  Borrower waives any right of offset it now has or may hereafter have against Lender hereof and its successors and assigns.  Borrower waives presentment, demand, protest, notice of protest, notice of intent to accelerate, notice of acceleration, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note.  Borrower expressly agrees that any extension or delay in time for payment or enforcement of this Note, renewal of this Note and any substitution or release of the Collateral will not in any way affect the liability of Borrower hereunder.  Any delay on Lender's part in exercising any right hereunder shall not operate as a waiver.  Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

9.      <u>Costs of Collection.</u>  Borrower agrees to pay all costs of collection when incurred and all costs incurred by Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees.  If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

10.      <u>Notices.</u>  All notices to be given pursuant to this Note shall be sufficient if given by personal services, by electronic mail, by guaranteed overnight delivery services, or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth in the Amended Credit Agreement, or to such other address as a party may request in writing.  Any time period provided in the giving of any notice hereunder shall commence upon the earlier date of: personal service, the day after deliver to the guaranteed overnight delivery service, the date of proof of receipt of the electronic mail, or three (3) days after mailing certified or registered mail.

11.      <u>Construction.</u>  This Note and Loan Agreement to be executed in connection with this Note have been reviewed and negotiated by Borrower and Lender at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party.  The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

12.      <u>Partial Invalidity.</u>  If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof.  No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

**[SIGNATURE PAGE FOLLOWS]**

4893-3942-7121\1

IN WITNESS WHEREOF, Borrower has executed this instrument as of the date first written on page 1 hereof.

BORROWER:

SONEV CONSTRUCTION LLC, Debtor-In-Possession

By:_____
Name:_____
Its:_____

3